IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2012 SEP 18  AM II: 49

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
        DEPUTY

| | |
|---|---|
| UNITED STATES COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>SENEN POUSA, INVESTMENT INTELLIGENCE CORPORATION, *DBA* PROPHETMAX MANAGED FX, JOEL FRIANT, MICHAEL DILLARD, AND ELEVATION GROUP, INC.<br><br>Defendants. | CASE NO.:<br><br>**A12CV0862**<br><br>**LY** |

**COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL MONETARY PENALTIES, AND OTHER EQUITABLE RELIEF**

Plaintiff, the United States Commodity Futures Trading Commission ("Commission" or "CFTC"), by its attorneys, alleges as follows:

## I.   SUMMARY

1.     From at least January 1, 2012 through the present (the "relevant period"), Defendants Senen Pousa ("Pousa") and Joel Friant ("Friant"), individually and as the agents of Defendant Investment Intelligence Corporation, *dba* ProphetMax Managed FX ("IIC"), operated a fraudulent scheme that solicited clients to provide IIC with discretionary authority to engage in

leveraged foreign currency ("forex") transactions on their behalf with IB Capital FX, LLC, an off-shore counterparty purportedly operating from offices in New Zealand.

2.     During the relevant period, IIC, Pousa and Friant accepted at least fifty three million dollars ($53,000,000) from not less than nine hundred sixty (960) clients worldwide, including clients in the United States, Australia, the United Kingdom, Canada, Germany, the Netherlands and Singapore, among other countries, through the use of emails and sophisticated Internet webcasts , podcasts, and webinars sent directly to clients via their websites *www.investmentintelligence.com.au* and  *www.prophetmax.com*, in addition to using personal solicitations by IIC's agents located in the United States and Australia.  IIC, through Pousa and Friant, also used Defendants Elevation Group, Inc. ("Elevation"), and Michael Dillard ("Dillard"), operating out of Austin, Texas, to solicit clients to participate in the fraudulent scheme.

3.     During the relevant period, IIC, Pousa and Friant, individually and as the agents of IIC, misrepresented material facts, and failed to disclose other material facts, in their solicitations to actual and prospective clients, which operated as a fraud or deceit upon them, in violation of Section 4*o*(1)(B) of the Act, 7 U.S.C. § 6*o*(1)(B) (2006), as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008 ("CRA")), §§ 13101-13204, 122 Stat. 1651 (enacted June 18, 2008).  The fraudulent misrepresentations and omissions of material facts by IIC, Pousa and Friant included, without limitation, that:  (i) clients would earn a monthly return of 9%;  (ii) IIC's managed forex trading would risk less than 3% of a client's capital per transaction; (iii) IIC was able to limit the risk inherent to forex trading by limiting managed forex trading to two (2) to five (5) trades per month; (iv) IIC had six (6) "proprietary traders" working twenty-four (24)

hours a day trading clients' funds; and (v) omitting that they were not registered or exempt from the requirement to register with the Commission;.

4.      IIC, by and though its agents, violated Section 2(c)(2)(C)(iii)(I)(bb) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(bb) (2006 & Supp. IV 2011), and Commission Regulation ("Regulation") 5.3(a)(3)(i), 17 C.F.R. § 5.3(a)(3)(i) (2012), by exercising discretionary trading authority and/or obtaining written authorization to exercise written trading authority over at least nine hundred sixty (960) accounts for or on behalf of persons most, if not all, that are not eligible contract participants ("ECPs") in connection with leveraged foreign currency ("forex") transactions while not registered as a commodity trading advisor ("CTA") with the Commission, and by failing to register as a CTA, respectively.

5.      Pousa and Friant, respectively, violated Section 2(c)(2)(C)(iii)(I)(bb) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(bb) (2006 & Supp. IV 2011), and Regulation 5.3(a)(3)(ii), 17 C.F.R. § 5.3(a)(3)(ii) (2012), by soliciting clients and prospective clients to open discretionary accounts in retail, leveraged forex transactions, or supervising any person so engaged, while associated with IIC as a partner, officer, employee, consultant or similar agent, without being registered with the Commission as an associated person ("AP") of IIC.

6.      During the relevant period, and continuing through the present, Elevation, while acting as an introducing broker ("IB"), has solicited, and continues to solicit, orders from non-ECPs in connection leveraged forex transactions without registering with the Commission, and has failed to register as an IB, in violation of Section 2(c)(2)(C)(iii)(I)(aa) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) (2006 & Supp. IV 2011), and Regulation 5.3(a)(5)(i), (ii), 17 C.F.R. § 5.3(a)(5)(i) (2012), respectively.

7.      Similarly, Dillard violated 2(c)(2)(C)(iii)(I)(aa), 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) (2006 & Supp. IV 2011), and Regulation 5.3(a)(5)(ii), 17 C.F.R. § 5.3(a)(5)(ii) (2012) by soliciting orders from non-ECPs in connection leveraged forex transactions without registering with the Commission, and by acting as APs of a IB without being registered with the Commission.

8.      Finally, IIC's website *www.prophetmax.com* prominently features client testimonials, among other things.  Because IIC's website lacks the specified disclaimers and cautionary statements that must accompany the use of client testimonials, IIC is also violating Regulation 4.41(a)(3),  17 C.F.R. § 4.41(a)(3) (2012).

9.      Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, the Commission brings this action to enjoin Defendants' unlawful acts and practices and to compel their compliance with the Act and to further enjoin the Defendants from engaging in any commodity and forex related activity.  In addition, the Commission seeks civil monetary penalties and such other equitable relief as this Court may deem necessary or appropriate. Unless restrained and enjoined by this Court, Defendants will continue to engage in the acts and practices alleged in this Complaint and similar acts and practices, as more fully described below.

## II.   **JURISDICTION AND VENUE**

10.    This Court has jurisdiction over this matter as alleged herein pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which provides that whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order thereunder, the Commission may bring an action in the proper district court of the United States to enjoin such act or practice, or to enforce compliance with the Act.

11.    Venue properly lies with the Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), in that the Defendants are found in, inhabit, or transact business in this District, and the acts and practices in violation of the Act occurred, are occurring, or are about to occur within this District.

### **THE PARTIES**

12.    Plaintiff **U.S. Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the responsibility for administering and enforcing the provisions of the Act, 7 U.S.C. §§ 1 *et seq.*, and the Regulations promulgated under it, 17 C.F.R. §§ 1.1 *et seq.* (2011).  The Commission maintains its principal office at Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

13.    Defendant **Senen Pousa** is a resident of Australia and is IIC's principal and registered agent.  Throughout the relevant period, Pousa was in charge of handling the day-to-day operations of and solicitation of clients for IIC.  Pousa has never been registered with the Commission in any capacity, nor has he sought or does he qualify for exemption from registration.

14.    Defendant **Investment Intelligence Corporation, d/b/a ProphetMax FX** ("**IIC**") is an Australian corporation.  Its principal place of business is Waterfront Place, Level

19, 1 Eagle Street, Brisbane, QLD, 4000, Australia. IIC has never been registered with the Commission in any capacity. IIC is not a financial institution, registered broker dealer, insurance company, financial holding company, or investment bank holding company, or an associated entity of such entities.

15. Defendant **Joel Friant** is a resident of Bellingham, Washington. Throughout the relevant period, Friant was the Client Service Representative of IIC who provided clients with day-to-day client assistance, account opening documents, customer assistance, and wire instructions for investing with IIC's managed forex program. Friant has never been registered with the Commission in any capacity, nor has he sought or does he qualify for exemption from registration.

16. Defendant the **Elevation Group, Inc., d/b/a Elevation Group FX** is an Texas corporation. Its principal place of business is 815-A Brazas St. Suite 111 Austin, Texas 78701. Elevation has never been registered with the Commission in any capacity. Elevation is not a financial institution, registered broker dealer, insurance company, financial holding company, or investment bank holding company, or an associated entity of such entities.

17. Defendant M̶i̶k̶e̶ Michael **Dillard** is a resident of Austin, TX and is the principal of Elevation. He operates Elevation, provides online advice to subscribers of Elevation, and solicited clients for IIC's managed forex investment. Dillard has never been registered with the Commission in any capacity, nor has he sought or does he qualify for exemption from registration.

## OTHER RELEVANT ENTITIES

18. **IB Capital FX LLC** of Wellington, NZ ("IB Capital) is a Dutch corporation with its principal place of business located at IBCAP Office, Level 5, 22 the Terrace 6011 Wellington, New Zealand. IB Capital has never been registered with the Commission in any

capacity. Upon information and belief, IB Capital is not a financial institution, registered broker dealer, insurance company, financial holding company, or investment bank holding company, or an associated entity of such entities.

## STATUTORY BACKGROUND

### A. Registration Requirements

19.     On October 18, 2010, the Commission enacted new regulations implementing certain provisions of the  CRA and Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank Act"), Pub. L. No. 111-203, Title VII, §§ 701-774, 124 Stat. 1376 (enacted July 21, 2010) and the Act, with respect to off-exchange retail forex transactions.

20.     Pursuant to Section 2(c)(2)(C)(iii)(I)(bb) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(bb) (2006 & Supp. IV 2011), an entity, including a CTA, or an AP of a CTA, must be registered with the Commission in order to exercise discretionary trading authority or obtain written authorization to exercise written trading authority over any account for or on behalf of any person that is not an ECP in connection with retail, leveraged forex transactions.

21.     For the purposes of trading forex, a CTA is defined in Regulation 5.1(e)(1), 17 C.F.R. § 5.1(e)(1) (2012), as "any person who exercises discretionary trading authority or obtains written authorization to exercise discretionary trading authority over any account for or on behalf of any person that is not an eligible contract participant . . . in connection with retail forex transactions."

22.     Regulation 5.3(a)(3)(i), 17 C.F.R. § 5.3(a)(3)(i) (2012), requires any person acting as a CTA, as defined in § 5.1(e)(1), to be registered as such.

23.     Section 4o(1)(B) of the Act, 7 U.S.C. 6o(1)(B) (2012), in relevant part, makes it unlawful for a CTA, by use of the mails or any means or instrumentality of interstate commerce,

directly or indirectly, to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client.

24.     Section 2(c)(2)(C)(ii)(I) of the Act, 7 U.S.C. § 2(c)(2(C)(ii)(I) (2006 & Supp. IV 2011), states in relevant part that Section 4*o* of the Act, 7 U.S.C. § 6*o* (2006), applies to agreements, contracts or transactions in foreign currency described in Section 2(c)(2)(C)(i) of the Act, 7 U.S.C. § 2(c)(2)(C)(i) (2006 & Supp. IV 2011).

25.     Regulation 5.25, 17 C.F.R. § 5.25 (2012), states in relevant part that Section 4*o* of the Act, 7 U.S.C. § 6*o* (2006), shall apply to retail forex transactions that are subject to the requirements of Part 5 of the Commission's Regulations "as though" Section 4*o* was set forth therein and included specific references to retail forex transactions and the persons defined in Regulation 5.1, 17 C.F.R. § 5.1 (2011).

26.     For purposes of trading forex, an AP of a CTA is defined in Regulation 5.1(e)(2), 17 C.F.R. § 5.1(e)(2) (2012), as "any natural person associated with a commodity trading advisor . . . as a partner, officer, employee, consultant or agent . . . in any capacity which involves: (i) the solicitation of a client's or prospective client's discretionary account; or (ii) the supervision of any person or persons so engaged."

27.     Regulation 5.3(a)(3)(ii), 17 C.F.R. § 5.3(a)(3)(ii) (2012), requires any person acting as an AP of a CTA, defined in § 5.1(e)(2), to be registered as such.

28.     Throughout the relevant period, an ECP is defined by the Act, in relevant part, as an individual with total assets in excess of (i) $10 million, or (ii) $5 million and who enters the transaction "to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual." *See* Section 1a(12)(xi) of the Act, 7 U.S.C. § 1a(12)(xi) (2006).

29.     Regulation 4.41(a)(3) prohibits CTAs from advertising in a manner which refers to client testimonials unless those testimonials are accompanied by a disclaimer or cautionary statement.  Specifically, Regulation 4.41(a)(3), in pertinent part, makes it unlawful for a CTA to advertise in a manner that refers to any testimonial unless the advertisement prominently discloses: "(i) That the testimonial may not be representative of the experience of other clients; (ii) That the testimonial is no guarantee of future performance or success; and (iii) If, more than a nominal sum is paid, the fact that it is a paid testimonial."  17 C.F.R. § 4.41(a)(3) (2012).

30.     The term IB is defined, in relevant part, in Section 5.1(f)(1) of the Regulations, 17 C.F.R. § 5.1(f)(1) (2011), as any person who solicits or accepts orders from a customer that is not an eligible contract participant, in connection with retail forex transactions.

31.     The term AP of an IB is defined, in relevant part, in Section 5.1(f)(2) of the Regulations, 17 C.F.R. § 5.1(f)(2) (2011), as any natural person associated with an IB as a partner, officer, employee, or agent in any capacity which involves "[t]he solicitation or acceptance of retail forex customers' orders."

## FACTS

32.     Throughout the relevant period, IIC, through Pousa, Friant and its other agents, utilized "wealth creation" webcasts, webinars, podcasts, emails, and other online seminars via the Internet to directly and indirectly solicit actual and prospective clients worldwide, including the United States, to open forex trading accounts at IIC.  Further, IIC, through Pousa, Friant and its other agents, used these means to convince clients to allow IIC to exercise discretionary trading authority over clients' accounts at IB Capital that engaged in leveraged forex transactions, or provided IIC with written discretionary trading authority to trade said accounts.

33.     Clients also were solicited by Elevation, through its agent Dillard.  Elevation, by and through its agents, operates the website *www.theelevationgroup.net,* through which it

introduces its subscribers to various investment schemes. Its operator, Dillard purports to help middle class individuals learn of investment opportunities that he contends are only available to the wealthy.

34.     Clients paid a "membership fee" of approximately two thousand dollars ($2,000) directly to IIC to gain twelve (12) months of access to IIC's managed forex services. Clients who were solicited by Elevation and Dillard paid an additional fee directly to Elevation. All clients were advised that ten thousand ($10,000) was the minimum deposit required to participate in IIC's managed forex services.

34.     Elevation, through Dillard, recommended to its subscribers that they invest with Pousa and IIC. Elevation was compensated with a 30% commission from IIC's two thousand dollar ($2,000) membership fee for every client introduced to IIC.

35.     Clients completed the account opening documents provided to them by the Friant and other agents of IIC. Clients were directed by IIC to open leveraged forex accounts at IB Capital, a counterparty operating out of New Zealand and the Netherlands. Each client who opened an account at IB Capital executed a written limited power of attorney ("LPOA"), granting IIC *dba* Prophetmax discretionary trading authority over their account. These LPOA's provided IIC with complete trading authority over the client's account.

36.     Friant was to be compensated with a 2.5% share of the 25% "performance fee" debited from clients' accounts by IIC. This compensation was paid to Friant via a deposit into Friant's IB Capital trading account.

37.     Clients were promised by IIC, through Pousa, Friant and other agents: (i) a monthly return of 9%; (ii) that IIC's managed forex trading would risk less than 3% of a client's capital per transaction; (iii) that IIC was able to limit the risk inherent to forex trading by limiting

its managed forex trading to 3 to 4 trades per month; and (iv) that IIC has six (6) "proprietary traders" working twenty-four (24) hours a day trading clients' funds. All of these representations to clients were false.

    38.    In one webcast video, Pousa explains to Dillard how IIC purportedly trades clients funds in leveraged forex:

> Dillard: "How does your company work, how do people get involved, what are the requirements, if you don't mind? Let's get to it."

> Pousa: "There are two services [offered by IIC]. One you could say is managed and this is a service where there are six (6) proprietary traders that trade a currency account on your behalf twenty-four (24) hours a day each in eight (8) hour shifts while the currency markets are open. The minimum there is $10,000."

> Pousa: "Very simple process, someone opens an account and from that point on, it gets traded. There is a platform that you can download so you can see what the proprietary trading group is doing with your money every single day. You could sit there twenty-four (24) hours per day and see the transactions they are making whenever they occur. Now the transactions with these are really only five (5) transactions per month on average. And these transactions occur within a few seconds most of the time- straight in and straight out. It's not holding something for hours, days, weeks or months. It's holding them in and out, straight away..."

> Pousa: "Remembering the leverage ratio. They have a leverage ratio of 100:1. Someone with $10,000 has really $1,000,000 they can get in the market. So that's the leverage component. But they [traders] also exercise risk management rules. They are never risking more than 1-3% of the capital on any one time...."

    39.    The representations to clients in the preceding paragraph were false because Defendants' made more than "only five (5) transactions per month on average," risked more than "1-3% of the capital on any one time," and there were not "six (6) proprietary traders that trade a currency account on [clients'] behalf twenty-four (24) hours a day each in eight (8) hour shifts while the currency markets are open."

    40.    Dillard subsequently appeared on multiple webcasts and webcasts with Pousa, touting the benefits of IIC's purported trading system. He represented that investments with

Pousa and IIC were sound and this endorsement induced members of Elevation to allow IIC to exercise discretionary trading authority over their accounts at IB Capital.

41.    Friant, who held himself out as a "client service representative" of IIC, provided clients with instructions on how to wire funds to a bank account in the name of IB Capital in New Zealand. Clients, at the direction of Pousa and Friant, wired funds to IB Capital for trading by IIC in its managed forex investment.

42.    On or about May 16-17, 2012, clients suffered a loss of over sixty (60) percent of their funds when IIC, by and through its agents, entered over two hundred (200) forex trades in each client's account.  IB Capital was the counterparty to all of IIC's trades on behalf of clients. These trades were in contravention of the representations made by IIC, by and through its agents.

43.    In webcasts subsequent to May 17, 2012, Pousa admitted that he had very little prior experience trading forex, that hundreds of trades were effected in clients' accounts in a single day, that more than three percent (3%) of clients' funds were traded at one time, and that IIC had only one trader trading clients' accounts, not the "six (6) proprietary" traders claimed previously.

44.    In response to numerous IIC client complaints to IB Capital about their losses, IB Capital notified clients that it was closing all accounts of clients, required clients to execute account closing documents, and notified clients that their accounts were automatically settled.

45.    The forex trades conducted, or offered to be conducted, by IIC, Pousa and Friant on behalf of the Defendants' clients were entered into on a leveraged or margined basis.  IIC was required to provide as margin only a percentage of the value of the forex contracts that it purchased.

46.     The forex transactions for which the Defendants solicited clients, and placed with IB Capital acting as the counterparty, neither resulted in delivery within two days nor created an enforceable obligation to deliver between a buyer and a seller who had the ability to deliver and accept delivery, respectively, in connection with their line of business.  Rather, these forex contracts remained open from day to day and ultimately were offset without anyone making or taking delivery of actual currency (or facing an obligation to do so).

47.     Neither IIC, Pousa, Friant nor IB Capital are a financial institution, registered broker dealer, insurance company, financial holding company, or investment bank holding company or associated person of financial institutions, registered broker dealer, insurance company, financial holding company, or investment bank holding company.

48.     As a result of Defendants' solicitations, most if not all of the nine hundred sixty (960) clients who opened trading accounts during the relevant period were not ECPs as that term is defined in Section 1(a)(12)(A)(xi) of the Act, 7 U.S.C. § 1a(12)(A)(xi) (2006).

49.     The Defendants failed to disclose to clients or prospective clients that IIC was acting as a CTA, and Pousa and Friant were acting as APs of a CTA, without the benefit of registration with the Commission and without claiming a valid exemption from registration.

50.     The Defendants failed to disclose to clients or prospective clients that Elevation was acting as an IB, and Dillard was acting as an AP of an IB, without the benefit of registration with the Commission and without claiming a valid exemption from registration.

51.     Pousa, Friant and/or other agents or employees of IIC committed the acts described in this Complaint within the scope of their agency, employment or office with IIC; therefore IIC is liable pursuant Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B).

52.     Dillard, and/or other agents or employees of Elevation committed the acts described in this Complaint within the scope of their agency, employment or office with Elevation; therefore Elevation is liable pursuant Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B).

### III.     VIOLATIONS OF THE COMMODITY EXCHANGE ACT

#### COUNT I
#### VIOLATION OF SECTION 4o(1)(B) OF THE ACT:
#### FRAUD BY COMMODITY TRADING ADVISOR AND
#### ASSOCIATED PERSON OF COMMODITY TRADING ADVISOR

53.     The allegations of paragraphs 1 through 52 are re-alleged and incorporated herein by reference.

54.     During the relevant period, IIC, and Pousa and Friant, individually and as the agents of IIC, misrepresented material facts, and failed to disclose other material facts, in their solicitations to actual and prospective clients, which operated as a fraud or deceit upon them, in violation of Section 4o(1)(B) of the Act, 7 U.S.C. § 6o(1)(B) (2006), as amended by the CRA, including but not limited to: (i) Defendants were not registered or exempt from the requirement to register with the Commission; (ii) Pousa, Friant, and IIC failed to disclose to clients or prospective clients that IIC was acting as a CTA, and Pousa and Friant were acting as APs of a CTA, without the benefit of registration with the Commission and without claiming a valid exemption from registration; (iii) Pousa, Friant, and IIC failed to disclose to clients or prospective clients that Elevation was acting as an IB, and Dillard was acting as an AP of an IB, without the benefit of registration with the Commission and without claiming a valid exemption from registration; (iv) fraudulently promised clients a monthly return of 9%;  (v) falsely promised clients that IIC's managed forex trading would risk less than 3% of a client's capital per transaction; (vi) falsely promised to be able to limit the risk inherent to forex trading by

limiting its managed forex trading to 3 to 4 trades per month; and (vii) falsely claimed to have

six (6) "proprietary traders" working twenty-four (24) hours a day trading clients' funds.

55.    IIC's, Pousa's, and Friant's misrepresentations and omissions as alleged herein

were material in that reasonable clients would consider them important in making investment

decisions.

56.    The foregoing acts, omissions, and misrepresentations of Pousa and Friant

occurred  within the scope of their employment, office or agency with IIC, therefore IIC is liable

for those acts, omissions, and misrepresentations that violated Section 4$o$(1)(B) of the Act, 7

U.S.C. § 6$o$(1)(B), pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B).

57.    Each omission of a material fact, including but not limited to those specifically

described herein, is alleged herein as a separate and distinct violation of Section 4$o$(1)(B) of the

Act, 7 U.S.C. § 6$o$(1)(B) (2006).

## COUNT II:
## VIOLATION OF SECTION 2(c)(2)(C)(iii)(I)(bb) OF THE ACT AND REGULATION 5.3(a)(3)(i): FAILURE TO REGISTER AS A COMMODITY TRADING ADVISOR

58.    The allegations of paragraphs 1 through 57 are re-alleged and incorporated herein

by reference.

59.    During the relevant period, IIC acted as a CTA, as defined in Regulation

5.1(e)(1), 17 C.F.R. § 5.1(e)(1) (2012), related to off-exchange forex transactions, because it

exercised discretionary authority over accounts of individuals who were not ECPs, as defined in

Section 1a of the Act, 7 U.S.C. § 1a, in connection with retail forex transactions.

60.    During the relevant period, IIC exercised discretionary trading authority or

obtained written authorization to exercise written trading authority over any account for or on

behalf of  persons that were not ECPs in connection with leveraged forex transactions while not

being registered as a CTA with the Commission, in violation of Section 2(c)(2)(C)(iii)(I)(bb) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(bb) (2006 & Supp. IV 2011), and Regulation 5.3(a)(3)(i), 17 C.F.R. § 5.3(a)(3)(i) (2012).

61.     Throughout the relevant period, Pousa and Friant, individually and as the agents of IIC, solicited clients for IIC to exercise discretionary trading authority or obtain written authorization to exercise written trading authority over accounts for or on behalf of persons that were not ECPs in connection with leveraged forex transactions.

62.     Each solicitation by Pousa and/or Friant occurred within the scope of their office as  agents of IIC, and therefore, IIC is liable for Pousa's and Friant's respective violations of Section 2(c)(2)(C)(iii)(I)(bb) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(bb) (2006 & Supp. IV 2011), pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006).

63.      Each instance that IIC engaged in the conduct described herein and failed to register as a CTA with the Commission is alleged as a separate and distinct violation of Section 2(c)(2)(C)(iii)(I)(bb) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(bb) (2006 & Supp. IV 2011), and Regulation 5.3(a)(3)(i), 17 C.F.R. § 5.3(a)(3)(i) (2012).

## COUNT III:
### VIOLATION OF SECTION 2(c)(2)(C)(iii)(I)(bb) OF THE ACT AND REGULATION 5.3(a)(3)(ii): FAILURE TO REGISTER AS AN ASSOCIATED PERSON OF A COMMODITY TRADING ADVISOR

64.     The allegations of paragraphs 1 through 63 are re-alleged and incorporated herein by reference. During the relevant period, Pousa and Friant, respectively, acted as APs of a CTA, as  defined in Regulation 5.1(e)(2)(i), 17 C.F.R. § 5.1(e)(2)(i) (2012), because both Pousa and Friant are natural persons associated with  a CTA as defined in Regulation 5.1(e)(1), 17 C.F.R. § 5.1(e)(1) (2012) as a partner, officer, employee, consultant, or agent, in a capacity that involved:

(i) the solicitation of a client's or prospective clients' discretionary account; or (ii) the supervision of any person or person so engaged.

65.     During the relevant period, Pousa and Friant, individually and as the agents of IIC, while associated with IIC as a partner, officer, employee, consultant or similar agent, solicited clients or prospective clients to open discretionary accounts in retail, leveraged forex transactions, or Pousa and/or Friant supervised other persons so engaged, without being registered with the Commission as an AP of IIC, in violation of Section 2(c)(2)(C)(iii)(I)(bb) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(bb) (2006 & Supp. IV 2011) and Regulation 5.3(a)(3)(ii), 17 C.F.R. § 5.3(a)(3)(ii) (2012).

66.     Each instance that Pousa and/or Friant engaged in this conduct and failed to register as an AP of IIC with the Commission is alleged as a separate and distinct violation of Section 2(c)(2)(C)(iii)(I)(bb) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(bb) (2006 & Supp. IV 2011), and Regulation 5.3(a)(3)(ii), 17 C.F.R. § 5.3(a)(3)(ii) (2012).

## COUNT IV
## VIOLATION OF SECTION 2(c)(2)(C)(iii)(I)(aa) OF THE ACT
## AND REGULATION 5.3(a)(5)(i)
## (FAILURE TO REGISTER AS AN INTRODUCING BROKER)

67.     The allegations set forth in paragraphs 1 through 66 are re-alleged and incorporated herein by reference.

68.     Elevation, through its agents, solicited clients to invest in retail forex trading by arranging and introducing them to open accounts at a CTA.  By such conduct, Elevation acted as an IB.

69.     Most, if not all, of Elevation's clients were individual clients or small corporate entities with limited asset holdings less than $10 million, and, as such, fell outside of the definition of an ECP pursuant to Section 1a(12)(xi) of the Act, 7 U.S.C. § 1a(12)(xi) (2006).

70.     During the relevant period, Elevation solicited orders from non-ECPs in connection with forex transactions and acted as an IB without being registered with the Commission, in violation of Section 2(c)(2)(C)(iii)(I)(aa), as amended by the CRA, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa), and Regulation 5.3(a)(5)(i), 17 C.F.R. § 5.3(a)(5)(i) (2012).

71.     Each day that Elevation failed to register as an IB is alleged as a separate and distinct violation of Section 2(c)(2)(C)(iii)(I)(aa), as amended by the CRA,  7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa), and Regulation 5.3(a)(5)(i), 17 C.F.R. § 5.3(a)(5)(i) (2012).

**COUNT V**
**VIOLATIONS OF SECTION 2(c)(2)(C)(iii)(I)(aa) OF THE ACT**
**AND REGULATION 5.3(a)(5)(ii)**
**(ACTING AS AN UNREGISTERED ASSOCIATED PERSON OF AN IB)**

72.     The allegations set forth in paragraphs 1 through 71 are re-alleged and incorporated herein by reference.

73.     During the relevant period, in soliciting persons for off-exchange retail foreign currency trading on behalf of Elevation while associated with Elevation, Dillard acted as an AP of Elevation without the benefit of registration, in violation of Section 2(c)(2)(C)(iii)(I)(aa), as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa), and Regulation 5.3(a)(5)(ii), 17 C.F.R. § 5.3(a)(5)(ii) (2012).

74.     The foregoing failure of Dillard to register as an AP of Elevation occurred within the scope of Dillard's employment or office with Elevation.  Elevation is therefore liable for Dillard's acts and failures in violation of Section 2(c)(2)(C)(iii)(I)(aa), as amended by the CRA, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa), and Regulation 5.3(a)(5)(ii), 17 C.F.R. § 5.3(a)(5)(ii) (2012) pursuant to Section 2(a)(1)(B) of the Act, as amended, to be codified at 7 U.S.C. § 2(a)(1)(B).

75.     Each day that Dillard failed to register as an AP of Elevation throughout the relevant period, is alleged as a separate and distinct violation of Section 2(c)(2)(C)(iii)(I)(aa), as

amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa), and Regulation

5.3(a)(5)(ii), 17 C.F.R. § 5.3(a)(5)(ii) (2012).

## COUNT VI
## VIOLATIONS OF REGULATION 4.41(a)(3), 17 C.F.R. § 4.41(a)(3):
## FAILURE TO PROVIDE REQUIRED CAUTIONARY STATEMENTS
## CONCERNING CLIENT TESTIMONIALS

76.     The allegations set forth in Paragraphs 1 through 75 are re-alleged and

incorporated herein by reference.

77.     Regulation 4.41(a)(3), 17 C.F.R. § 4.41(a)(3) (2012), provides that a CTA may

not advertise in a manner that refers to any testimonial, unless the advertisement prominently

discloses that the testimonial may not be representative of the experience of other clients and is

no guarantee of future performance or success.

78.     IIC, by and through its agents, advertises managed account services via its

website, which prominently features testimonials from unnamed clients.

79.     IIC website does not contain the disclaimer required by Regulation 4.41(a)(3), 17

C.F.R. § 4.41(a)(3) (2012), stating the limitations of making investment decisions based on client

testimonials, in violation of Regulation 4.41(a)(3), 17 C.F.R. § 4.41(a)(3) (2012).

80.     Each instance in which IIC advertises its trading system with the testimonials on

its website constitutes a separate violation of Regulation 4.41(a)(3), 17 C.F.R. § 4.41(a)(3)

(2012).

## IV.   RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that this Court, as authorized by

Section 6c of the Act, 7 U.S.C. § 13a-1, and pursuant to the Court's own equitable powers, enter:

a)      An order finding that IIC violated Section 2(c)(2)(C)(iii)(I)(bb) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(bb) (2006 & Supp. IV 2011), and Regulation 5.3(a)(3)(i), 17 C.F.R. § 5.3(a)(3)(i) (2012);

b)      An order finding that Pousa and Friant violated Section 2(c)(2)(C)(iii)(I)(bb) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(bb) (2006 & Supp. IV 2011), and Regulation 5.3(a)(3)(ii), 17 C.F.R. § 5.3(a)(3)(ii) (2012);

c)      An order finding that Elevation  violated Section 2(c)(2)(C)(iii)(I)(aa), as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa), and Regulation 5.3(a)(3)(ii), 17 C.F.R. § 5.3(a)(5)(i) (2012);

d)      An order finding that Dillard violated Section 2(c)(2)(C)(iii)(I)(aa), as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa), and Regulation 5.3(a)(3)(ii), 17 C.F.R. § 5.3(a)(5)(i) (2012);

e)      An order finding that IIC, Pousa, and Friant  violated Section 4o(1)(B) of the Act, 7 U.S.C. § 6o(1)(B) (2006);

f)      An order finding that IIC violated Regulation 4.41(a)(3), 17 C.F.R. § 4.41(a)(3) (2012).

g)      An order of permanent injunction prohibiting the Defendants, and any of their agents, servants, employees, assigns, attorneys, and persons in active concert or participation with the Defendants, including any successors thereof, from directly or indirectly:

i)      Engaging in conduct in violation of Section 2(c)(2)(C)(iii)(I)(aa) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) (2006 & Supp. IV 2011), Section 2(c)(2)(C)(iii)(I)(bb) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(bb) (2006 &

Supp. IV 2011), and Regulations 5.3(a)(3)(i) and (ii),

17 C.F.R. §§ 5.3(a)(3)(i) and (ii) (2012);

ii)     Engaging in conduct in violation of Section 4*o*(1)(B) of the Act, 7 U.S.C.

§ 6*o*(1)(B) (2012);

iii)    Engaging in conduct in violation of Regulation 4.41(a)(3), 17 C.F.R. §

4.41(a)(3) (2012);

iv)     Trading on or subject to the rules of any registered entity (as that term is

defined in Section 1a of the Act, 7 U.S.C. § 1a (2006 & Supp. IV 2011));

v)      Entering into any transactions involving commodity futures, options on

commodity futures, commodity options (as that term is defined in

Regulation 1.3(hh), 17 C.F.R. § 1.3(hh) (2012) ("commodity options"),

security futures products, and/or foreign currency (as described in Sections

2(c)(2)(B) and 2(c)(2)(C)(i) of the Act , 7 U.S.C. §§ 2(c)(2)(B) and

2(c)(2)(C)(i) (2006 & Supp. IV 2011), ("forex contracts")), for their own

personal accounts or for any account in which they have a direct or

indirect interest;

vi)     Having any commodity futures, options on commodity futures,

commodity options, security futures products, and/or forex contracts

traded on their behalf;

vii)    Controlling or directing the trading for or on behalf of any other person or

entity, whether by power of attorney or otherwise, in any account

involving commodity futures, options on commodity futures, commodity

options, security futures products, and/or forex contracts;

    viii)    Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, security futures products, and/or forex contracts;

    ix)    Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2012); and

    x)    Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2011)), agent, or any other officer or employee of any person registered, exempted from registration or required to be registered with the CFTC except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2012).

h)    An order requiring the Defendants and any successors thereof, to disgorge to any officer appointed or directed by the Court all benefits received including, but not limited to, salaries, commissions, loans, fees, revenues, and trading profits derived, directly or indirectly, from the acts or practices which constitute violations of the Act, as described herein, and pre- and post-judgment interest thereon from the date of such violations;

i)    An order requiring the Defendants to make full restitution to every person or entity whose funds they received or caused another person or entity to receive as a result of the acts and practices which constitute violations of the Act, as described herein, and pre- and post-judgment interest thereon from the date of such violations;

j)      An order directing the Defendants and any successors thereof, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between them and any of the clients they solicited or accepted orders from as a result of the acts and practices which constitute violations of the Act, as described herein;

k)      An order requiring the Defendants to pay civil monetary penalties under the Act, to be assessed by the Court, in amounts of not more than the higher of: (1) $140,000 for each violation committed on or after October 23, 2008; or (2) triple the monetary gain to Defendants for each violation of the Act, as amended, and the Regulations;

l)      An order requiring the Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (2012); and

m)      An order providing such other and further relief as this Court may deem necessary and appropriate under the circumstances.

Date: September 18, 2012                    Respectfully Submitted,

                                            by:

                                            Timothy J. Mulreany
                                            JonMarc P. Buffa
                                            Attorneys for the Plaintiff
                                            U.S. Commodity Futures Trading Commission
                                            Three Lafayette Center
                                            1155 21st Street, NW
                                            Washington, DC 20581
                                            (202) 418-5306 (Mulreany)
                                            (202) 418-5332 (Buffa)
                                            (202) 418-5124 (facsimile)
                                            tmulreany@cftc.gov
                                            jbuffa@cftc.gov