FILED

2013 NOV 27 PM 1:07

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
           DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

U.S. COMMODITY FUTURES TRADING )
COMMISSION, )
 )
                    Plaintiff, )   Civil Action No. 1:12-cv-00862-LY
 )
v. )
 )
SENEN POUSA, INVESTMENT )
INTELLIGENCE CORPORATION, *DBA* )
PROPHETMAX MANAGED FX, JOEL )
FRIANT, MICHAEL DILLARD, AND )
ELEVATION GROUP, INC. )
 )
 )
                    Defendants. )

**████████ ORDER FOR ENTRY OF DEFAULT JUDGMENT, PERMANENT
INJUNCTION, CIVIL PENALTIES AND OTHER EQUITABLE RELIEF PURSUANT
TO FEDERAL RULE OF CIVIL PROCEDURE 55(b)(2) AGAINST DEFENDANTS
SENEN POUSA AND INVESTMENT INTELLIGENCY CORPORATION**

On September 18, 2012, Plaintiff U.S. Commodity Futures Trading Commission (the

"Commission" or "CFTC") filed a Complaint for Injunctive Relief, Civil Monetary Penalties,

and Other Equitable Relief ("Complaint") (Docket Entry ("D.E.") No. 1) against, among others,

Defendants Senen Pousa ("Pousa") and Investment Intelligence Corporation, *dba* ProphetMax

Managed FX ("IIC") (collectively "Defendants").  The Complaint seeks injunctive and other

equitable relief for violations of the Commodity Exchange Act ("Act"), as amended by the

Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank Act"),

Pub. L. No. 111-203, Title VII (the Wall Street Transparency and Accountability Act of 2010),

§§ 701-774, 124 Stat. 1376 (enacted July 21, 2010), 7 U.S.C. §§ 1 *et seq.,* and the Commission's

1

Regulations ("Regulations") promulgated thereunder, 17 C.F.R. § 1.1 *et seq.* (2012). That same day, the Court entered an *ex parte* statutory restraining order against Pousa and IIC. (D.E. No. 4).

Proper service of process has been affected on Defendants on September 25, 2012, by personal delivery of the Summons and Complaint to Pousa, and to IIC through Pousa. (D.E. Nos. 12 and 13).

On December 3, 2013, Plaintiff filed its Application for Entry of Default and the Clerk of the Court entered defaults against the Defendants Pousa and IIC for failure to respond to the Complaint or otherwise defend the action. (D.E. No.46).

The Court has carefully considered the Complaint, the allegations of which are well-pleaded and hereby taken as true, the Application, and other written submissions of the Commission filed with the Court, and being fully advised in the premises, pursuant to Fed. R. Civ. P. 55(b)(2), hereby:

GRANTS the Commission's application and enters findings of fact and conclusions of law finding Pousa and IIC liable as to all violations as alleged in the Complaint. The Court further grants the Commission's request to assess monetary damages against Pousa and IIC, including civil monetary penalties. Accordingly, the Court now issues the following Order for Default Judgment, Permanent Injunction and Ancillary Equitable Relief (the "Order") against Defendants Pousa and IIC.

## I.
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Order and that there is no just reason for delay. The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, permanent injunction and equitable relief pursuant to Section 6c of the Act, as amended, 7 U.S.C. § 13a-1, as set forth herein.

**THE COURT HEREBY FINDS:**

**A. Jurisdiction and Venue**

This Court has jurisdiction over the subject matter of this action and Defendants pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), which authorizes the Commission to seek injunctive relief against any person whenever it shall appear that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2006), in that Defendants transacted business in this district, and that certain transactions, acts, practices, and courses of business alleged in this Complaint occurred within this District.

**B. Findings of Fact**

   **1. The Parties To This Consent Order**

   1.    **Plaintiff Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act, as amended, 7 U.S.C. §§ 1 *et seq.*, and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2012).

   2.    **Defendant Investment Intelligence Corporation**, *dba* ProphetMax FX is an Australian corporation. Its principal place of business is Waterfront Place, Level 19, 1 Eagle Street, Brisbane, QLD, 4000, Australia. IIC has never been registered with the Commission in any capacity. IIC is not a financial institution, registered broker dealer, insurance company, financial holding company, or investment bank holding company, or an entity of such entities.

   3.    **Defendant Senen Pousa** is a resident of Australia and is IIC's principal and registered agent. Throughout the relevant period, Pousa was in charge of handling the day-to-

3

day operations of and solicitation of clients for IIC. Pousa has never been registered with the

Commission in any capacity, nor has he sought or does he qualify for exemption from

registration. Defendant Pousa is <u>not</u> a minor, incompetent, or currently a member of any branch

of the military service of the United States or otherwise exempted under the Service Members

Civil Relief Act and Rule 55(b)(2) of the Federal Rules of Civil Procedure.

**C.  Defendants' Solicitation for Discretionary Trading Accounts in Forex**

   4.  Beginning from at least January 1, 2012 and continuing to September 18, 2012

(the "relevant period"), IIC, through Pousa and its other agents, utilized "wealth creation"

webcasts, webinars, podcasts, emails, and other online seminars via the Internet to directly and

indirectly solicit actual and prospective clients worldwide to open forex trading accounts at IIC.

Further, IIC, through Pousa and its other agents, used these means to convince clients to allow

IIC to exercise discretionary trading authority over clients' accounts at IB Capital FX, LLP ("IB

Capital") that engaged in leveraged forex transactions, or provided IIC with written discretionary

trading authority to trade said accounts.

   5.  Clients were solicited either directly via IIC's webcasts, webinars, podcasts, and

other online seminars, or were solicited by Defendant Elevation Group, Inc. ("Elevation"),

through its agents, including Michael Dillard ("Dillard").  Elevation, by and through its agents,

operates the website *www.theelevationgroup.net,* through which it introduces its subscribers to

various investment options.

   6.  Clients of IIC paid a "membership fee" of approximately two thousand dollars

($2,000) directly to IIC to gain twelve (12) months of access to IIC's managed forex services.

Elevation and Dillard were paid a fee directly from IIC for clients who were solicited by

Elevation.  All clients were advised that ten thousand ($10,000) was the minimum deposit

required to participate in IIC's managed forex services.

7.      Clients completed the account opening documents provided to them by agents of IIC. Clients were directed by IIC to open leveraged forex accounts at IB Capital, a counterparty operating out of New Zealand and the Netherlands. Each client who opened an account at IB Capital executed a written limited power of attorney ("LPOA"), granting IIC *dba* Prophetmax discretionary trading authority over their account. These LPOA's provided IIC with complete trading authority over the client's account.

8.      Clients were promised by IIC, through Pousa and other IIC agents: (i) a monthly return of 9%; (ii) that IIC's managed forex trading would risk less than 3% of a client's capital per transaction; (iii) that IIC was able to limit the risk inherent to forex trading by limiting its managed forex trading to 3 to 4 trades per month; and (iv) that IIC has six (6) "proprietary traders" working twenty-four (24) hours a day trading clients' funds. All of these representations to clients were false.

9.      In one webcast video, Pousa explained to Dillard how IIC purportedly traded clients funds in leveraged forex:

Dillard: "How does your company work, how do people get involved, what are the requirements, if you don't mind? Let's get to it."

Pousa: "There are two services [offered by IIC]. One you could say is managed and this is a service where there are six (6) proprietary traders that trade a currency account on your behalf twenty-four (24) hours a day each in eight (8) hour shifts while the currency markets are open. The minimum there is $10,000."

Pousa: "Very simple process, someone opens an account and from that point on, it gets traded. There is a platform that you can download so you can see what the proprietary

5

trading group is doing with your money every single day. You could sit there twenty-four (24) hours per day and see the transactions they are making whenever they occur. Now the transactions with these are really only five (5) transactions per month on average. And these transactions occur within a few seconds most of the time- straight in and straight out. It's not holding something for hours, days, weeks or months. It's holding them in and out, straight away..."

Pousa: "Remembering the leverage ratio. They have a leverage ratio of 100:1. Someone with $10,000 has really $1,000,000 they can get in the market. So that's the leverage component. But they [traders] also exercise risk management rules. They are never risking more than 1-3% of the capital on any one time...."

10.     The representations to clients in the preceding paragraph were false because Defendants' made more than "only five (5) transactions per month on average," risked more than "1-3% of the capital on any one time," and there were not "six (6) proprietary traders that trade a currency account on [clients'] behalf twenty-four (24) hours a day each in eight (8) hour shifts while the currency markets are open."

11.     Clients, at the direction of Pousa and IIC's other agents, wired funds to IB Capital for trading by IIC in its managed forex investment.

12.     On or about May 16-17, 2012, clients suffered a loss of over sixty (60) percent of their funds when IIC, by and through its agents, entered over two hundred (200) forex trades in each client's account.  IB Capital was the counterparty to all of IIC's trades on behalf of clients. These trades were in contravention of the representations made by IIC, by and through its agents.

13.     In webcasts subsequent to May 17, 2012, Pousa admitted that he had very little prior experience trading forex, that hundreds of trades were effected in clients' accounts in a

6

single day, that more than three percent (3%) of clients' funds were traded at one time, and that IIC had only one trader trading clients' accounts, not the "six (6) proprietary" traders claimed previously.

14.     In response to numerous IIC client complaints to IB Capital about their losses, IB Capital notified clients that it was closing all accounts of clients, required clients to execute account closing documents, and notified clients that their accounts were automatically settled.

15.     The forex trades conducted, or offered to be conducted, by IIC and its agents on behalf of the Defendants' clients were entered into on a leveraged or margined basis.  IIC was required to provide as margin only a percentage of the value of the forex contracts that it purchased.

16.     The forex transactions for which the Defendants solicited clients, and placed with IB Capital acting as the counterparty, neither resulted in delivery within two days nor created an enforceable obligation to deliver between a buyer and a seller who had the ability to deliver and accept delivery, respectively, in connection with their line of business.  Rather, these forex contracts remained open from day to day and ultimately were offset without anyone making or taking delivery of actual currency (or facing an obligation to do so).

17.     Neither IIC, Pousa, Friant nor IB Capital are a financial institution, registered broker dealer, insurance company, financial holding company, or investment bank holding company or associated person of financial institutions, registered broker dealer, insurance company, financial holding company, or investment bank holding company.

18.     Most if not all of the nine hundred sixty (960) clients who opened trading accounts during the relevant period were not eligible qualified participants ("ECPs") as that term is defined in Section 1(a)(12)(A)(xi) of the Act, 7 U.S.C. § 1a(12)(A)(xi) (2006).

19.     The Defendants failed to disclose to clients or prospective clients that IIC was acting as a CTA, and Pousa was acting as an AP of a CTA, without the benefit of registration with the Commission and without claiming a valid exemption from registration.

**D.   The Solicitations at Issue Involved Retail Forex Transactions**

20.     The forex trades conducted, or offered to be conducted, on behalf of the clients solicited by Defendants were entered into on a leveraged or margined basis.

21.     The forex transactions for which the Defendants solicited clients, and placed with IB Capital acting as the counterparty, neither resulted in delivery within two days nor created an enforceable obligation to deliver between a buyer and a seller who had the ability to deliver and accept delivery, respectively, in connection with their line of business.  Rather, these forex contracts remained open from day to day and ultimately were offset without anyone making or taking delivery of actual currency (or facing an obligation to do so).

**E.   Failure to Register as Required**

22.     At no time during the relevant period was IIC registered with the Commission as a Commodity Trading Advisor ("CTA"), nor was Pousa registered with the Commission as an Associated Person ("AP") of IIC, a CTA.

23.     Pousa, committed the acts described herein both individually and within the scope of his agency, employment or office with IIC.

**F.   Conclusions of Law**

**1.   Defendants IIC and Pousa violated Section 4*o*(1)(B) of the Act.**

24.     As demonstrated by the foregoing facts, Pousa, individually and as the agent of IIC, misrepresented material facts, and failed to disclose other material facts, in his solicitations to actual and prospective clients, which operated as a fraud or deceit upon them, in violation of Section 4o(1)(B) of the Act, 7 U.S.C. § 6o(1)(B) (2006), as amended by the CRA.

25.     Pousa's misrepresentations and omissions were material in that reasonable clients would consider them important in making investment decisions.

26.     Pousa has engaged, is engaging, or is about to engage in acts and practices that violate Section 4o(1)(B) of the Act.  Unless restrained and enjoined by this Court, there is a reasonable likelihood that Pousa will continue to engage in the acts and practices described herein or in similar acts and practices that violate the Act and Regulations.  Furthermore, the nature of Pousa's violations and the need to deter others from committing similar violations of the Act and Regulations warrants the imposition of ancillary equitable relief to carry out the objectives of the Act and Regulations.

## 2.  Pousa and IIC violated Section 2(c)(2)(C)(iii)(I)(bb) of the Act and Regulation 5.3(a)(3)(ii)

27.     During the relevant period, IIC acted as a CTA, as defined in Regulation 5.1(e)(1), 17 C.F.R. § 5.1(e)(1) (2012), related to off-exchange forex transactions, because it exercised discretionary authority over accounts of individuals who were not ECPs, as defined in Section 1a of the Act, 7 U.S.C. § 1a, in connection with retail forex transactions.

28.     During the relevant period Pousa acted as an AP of a CTA, as defined in Regulation 5.1(e)(2)(i), 17 C.F.R. § 5.1(e)(2)(i) (2012), because Pousa is a natural person associated with a CTA as defined in Regulation 5.1(e)(1), 17 C.F.R. § 5.1(e)(1) (2012) as a partner, officer, employee, consultant, or agent, in a capacity that involved: (i) the solicitation of a client's or prospective clients' discretionary account; or (ii) the supervision of any person or person so engaged.

29.     During the relevant period, Pousa, individually and as the agent of IIC, while associated with IIC as a partner, officer, employee, consultant or similar agent, solicited clients or prospective clients to open discretionary accounts in retail, leveraged forex transactions, or

9

supervised other persons so engaged, without being registered with the Commission as an AP of

IIC, in violation of Section 2(c)(2)(C)(iii)(I)(bb) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(bb)

(2006 & Supp. IV 2011) and Regulation 5.3(a)(3)(ii), 17 C.F.R. § 5.3(a)(3)(ii) (2012).

      30.    Pousa has engaged, is engaging, or is about to engage in acts and practices that

violate Section 2(c)(2)(C)(iii)(I)(bb) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(bb) (2006 & Supp.

IV 2011) and Regulation 5.3(a)(3)(ii), 17 C.F.R. § 5.3(a)(3)(ii) (2012). Unless restrained and

enjoined by this Court, there is a reasonable likelihood that Pousa will continue to engage in the

acts and practices alleged in the Complaint or in similar acts and practices that violate the Act

and Regulations. Furthermore, the nature of Pousa's violations and the need to deter others from

committing similar violations of the Act and Regulations warrants the imposition of ancillary

equitable relief to carry out the objectives of the Act and Regulations.

## II.

## ORDER FOR PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

      31.    Based upon and in connection with the foregoing conduct, pursuant to Section 6c

of the Act, as amended, 7 U.S.C. § 13a-1, Pousa and IIC are permanently restrained, enjoined

and prohibited from directly or indirectly:

      a.    Engaging in any transaction, practice, or course of business which operates as a

            fraud or deceit upon any client or participant or prospective client or participant in

            violation of Section 4o(1)(B) of the Act, 7 U.S.C. § 6o(1)(B) (2006).

      b.    Engaging in any conduct in violation of Section 2(c)(2)(C)(iii)(I)(bb) of the Act, 7

            U.S.C. § 2(c)(2)(C)(iii)(I)(bb) (2006 & Supp. IV 2011) including, but not limited

            to, exercising discretionary authority over accounts of individuals who were not

ECPs, as defined in Section 1a of the Act, 7 U.S.C. § 1a, in connection with retail forex transactions.

c.   Engaging in any conduct in violation Regulation 5.3(a)(3)(ii), 17 C.F.R. § 5.3(a)(3)(ii) (2012), including, but not limited to, acting as an AP of an CTA without registering with the Commission.

32.   Defendants IIC and Pousa are also permanently restrained, enjoined and prohibited from directly or indirectly:

a.   Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act, as amended, 7 U.S.C. § 1a);

b.   Entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 1.3 (hh), 17 C.F.R. § 1.3(hh) (2011)) ("commodity options"), security futures products, and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as amended, 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts") for his own personal account or for any account in which he has a direct or indirect interest;

c.   Having any commodity futures, options on commodity futures, commodity options, security futures products, and/or forex contracts traded on his behalf;

d.   Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, security futures products, and/or forex contracts;

e.    Soliciting, receiving or accepting any funds from any person for the purpose of

purchasing or selling any commodity futures, options on commodity futures,

commodity options, security futures products, and/or forex contracts;

f.    Applying for registration or claiming exemption from registration with the

Commission in any capacity, and engaging in any activity requiring such

registration or exemption from registration with the Commission, except as

provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2012); and/or

g.    Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R.

§ 3.1(a) (2012)), agent or any other officer or employee of any person (as that

term is defined in Section 1a of the Act, as amended, 7 U.S.C. § 1a) registered,

exempted from registration or required to be registered with the Commission

except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2012).

## IV.
## CIVIL MONETARY PENALTY AND RESTITUTION

**A.    Civil Monetary Penalty**

**IT IS FURTHER ORDERED** that Defendants IIC and Pousa shall each pay a civil

monetary penalty in the amount of **seventy-nine million five hundred thousand dollars ($79.5**

**million)** ("CMP Obligation"), plus post-judgment interest.  Post-judgment interest shall accrue

on the CMP Obligation beginning on the date of entry of this Order and shall be determined by

using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. §

1961.

Defendants shall pay their CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> Commodity Futures Trading Commission
> Division of Enforcement
> ATTN:  Accounts Receivables – AMZ 340
> E-mail Box:  9-AMC-AMZ-AR-CFTC
> DOT/FAA/MMAC
> 6500 S. MacArthur Blvd.
> Oklahoma City, OK 73169
> Telephone: (405) 954-5644

If payment by electronic funds transfer is chosen, Defendants shall contact Linda Zurhorst or her successor at the address above to receive payment instructions and shall fully comply with those instructions. Defendants shall accompany payment of the CMP Obligation with a cover letter that identifies Defendants and the name and docket number of this proceeding. Defendants shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

**B. Restitution**

   **IT IS FURTHER ORDERED** that Defendants IIC and Pousa to jointly and severally make restitution to clients in the amount of $32 million plus post-judgment interest ("Restitution Obligation"). Post-judgment interest shall accrue on the CMP Obligation beginning on the date

of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

Defendants shall pay their CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> Commodity Futures Trading Commission
>
> Division of Enforcement
>
> ATTN: Accounts Receivables – AMZ 340
>
> E-mail Box: 9-AMC-AMZ-AR-CFTC
>
> DOT/FAA/MMAC
>
> 6500 S. MacArthur Blvd.
>
> Oklahoma City, OK 73169
>
> Telephone: (405) 954-5644

If payment by electronic funds transfer is chosen, Defendants shall contact Linda Zurhorst or her successor at the address above to receive payment instructions and shall fully comply with those instructions. Defendants shall accompany payment of the CMP Obligation with a cover letter that identifies Defendants and the name and docket number of this proceeding. Defendants shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

C. **Prejudgment Interest**

**IT IS FURTHER ORDERED** that Defendants IIC and Pousa to jointly and severally pay prejudgment interest obligation of $1,299,821. Thus, the restitution plus prejudgment interest total for Defendants is $33,299,821.

Defendants shall pay their CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> Commodity Futures Trading Commission
> Division of Enforcement
> ATTN:  Accounts Receivables – AMZ 340
> E-mail Box:  9-AMC-AMZ-AR-CFTC
> DOT/FAA/MMAC
> 6500 S. MacArthur Blvd.
> Oklahoma City, OK 73169
> Telephone: (405) 954-5644

If payment by electronic funds transfer is chosen, Defendants shall contact Linda Zurhorst or her successor at the address above to receive payment instructions and shall fully comply with those instructions. Defendants shall accompany payment of the CMP Obligation with a cover letter that identifies Defendants and the name and docket number of this proceeding. Defendants shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

**D.   Partial Satisfaction**

Any acceptance by the Commission of partial payment of Defendants' CMP Obligation or Restitution Obligation shall not be deemed a waiver of their obligation to make further payments pursuant to this Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

## VII.

## CONTINUED FORCE AND EFFECT OF COURT'S APPOINTMENT OF RECEIVER

**IT IS FURTHER ORDERED** that the Receiver, Guy M. Hohmann, appointed under this Court's orders shall continue to serve as Receiver in this proceeding with all of the duties and powers set forth in the November 15, 2012 Preliminary Injunction Order ("PI") and September 18, 2012 Statutory Restraining Order.  Pursuant to the PI, Defendants, and all other persons or entities served with a copy of the September 18, 2012 Statutory Restraining Order shall continue to cooperate fully with and assist the Receiver.

## VIII.

## MISCELLANEOUS PROVISIONS

33.      **Notice**:  All notices required to be given by any provision in this Consent Order shall be sent certified mail, return receipt requested, as follows:

Notice to Commission:

David Meister, Director of Enforcement
Commodity Futures Trading Commission
Division of Enforcement
1155 21st Street N.W.
Washington, DC 20581

All such notices to the Commission shall reference the name and docket number of this action.

34.      **Change of Address/Phone**:  Until such time as Pousa and IIC satisfy in full their Restitution Obligation, Disgorgement Obligation, and CMP Obligation as set forth in this Consent Order, Defendants shall provide written notice to the Commission by certified mail of any change to his telephone number and mailing address within ten (10) calendar days of the change.

35. **Prohibition on Transfer of Funds**: Defendants shall not transfer or cause others to transfer funds or other property to the custody, possession or control of any other person for the purpose of concealing such funds or property from the Court, the Commission, or any officer that may be appointed by the Court.

36. **Continuing Jurisdiction of this Court:** This Court shall retain jurisdiction of this action to ensure compliance with this Order and for all other purposes related to this action.

There being no just reason for delay, the Clerk of the Court is hereby directed to enter this *Order for Entry of Default Judgment, Permanent Injunction, Civil Penalties, And Other Statutory And Equitable Relief Against Defendants Senen Pousa and Investment Intelligence Corporation, dba ProphetMax Managed FX.*

**IT IS SO ORDERED** on this _27th_ , day of _November_ , 2013.

_____
**UNITED STATES DISTRICT JUDGE**