THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES COMMODITY FUTURES TRADING COMMISSION, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civil Action No. A-12-CV-0862-LY |
| SENEN POUSA, INVESTMENT INTELLIGENCE CORPORATION, *DBA* PROPHETMAX MANAGED FX, JOEL FRIANT, MICHAEL DILLARD, and ELEVATION GROUP, INC., | § § § § § § § | |
| *Defendants*. | § § | |

**RECEIVER'S STATUS UPDATE**

Comes now, Guy M. Hohmann, the Court-appointed Receiver in the above-referenced ProphetMax Receivership matter and the ancillary IB Capital matter, and files this his Status Update.

**I.    Status of Litigation Against Relief Defendants**

The Receiver's Original Complaint against Relief Defendants (the "Relief Defendant Litigation") named eight individuals that were the recipients of funds which were misappropriated from IB Capital. Apart from Zsofia Dobos (discussed more fully below), none of the Relief Defendants have filed an Answer to the Complaint. The Receiver has filed Requests for Entries of Default against six of the Relief Defendants. The Clerk of the Court entered those defaults and all Orders were granted on April 13, 2020. The Receiver also filed Motions for Entry of Default Judgments against six of the Relief Defendants. The Court has entered those default judgments which, in the aggregate total approximately USD $18.2 million.

### A. Riknik USD $7.2 million judgment

The Receiver, through his Slovakian counsel, will be seeking to have the approximate USD $7.2 million judgment against one of the Relief Defendants (Riknik) recognized in the courts of Slovakia. As noted in previous status reports, funds in the amount of the Riknik Judgment USD $7.2 million), are presently on deposit in Riknik's name at a bank in Slovakia ("CSOB"). The Receiver is moving forward with a proceeding to have the Riknik Judgment recognized in Slovakia. If successful, the Receiver would then have the funds on deposit in Slovakia repatriated to the U.S.

The Receiver's Slovakian counsel communicated the need to have a certified apostilled copy of the Riknik Judgment filed with the Slovakian court, along with a legal opinion speaking to the fact the Riknik Judgment has become final and non-appealable. In late June of this year, the Receiver provided these materials and the legal opinion. The Receiver's Slovakian counsel estimates the cost of the judgment recognition proceeding will be in the range of USD $18,000 to $24,000.

The Slovakian court's clerk has asked whether Riknik was capable of being legally served with the Complaint Against Relief Defendants given that it had previously been stricken from the Registry of the Seychelles Financial Services Authority for failing to pay annual fees and file certain annual reports. The Seychelles has a statute which allows for creditors of the stricken company to have them restored to the registry. Given the amount of the Riknik Judgment and what is expected to be less than USD $10,000-$15,000 to have Riknik reinstated, the Receiver believes it is advantageous to invest the additional time and expense should that become necessary.

In regard to timing, the Receiver's Slovakian counsel has informed the Receiver the proceeding to have the Riknik Judgment recognized by the Slovakian courts usually takes up to three months; although, the Covid-19 pandemic may impact this estimated time frame. If it becomes necessary to file the reinstatement proceeding, the Receiver will seek to have the proceedings occur simultaneously, if such is permissible under Slovakian law.

### B. Randius, Ltd. USD $7.2 million judgment

The Receiver has also obtained a default judgment in the amount of approximately USD $7.2 million against relief defendants Jennifer Marie Weare and Randius, Ltd. At one time, funds in this amount were on deposit in the Bank of Cyprus. Unfortunately, the Bank of Cyprus was declared insolvent during the collapse of the Cyprus banking system in 2013. The Cyprus Depositor's Scheme ("CDS"), like our Federal Depositors Insurance Corporation, typically limits recovery of funds from insolvent banks to 100,000 Euros. However, the Receiver has been informed by the Dutch Public Prosecutor's Office ("DPPO") there is a procedure pending before the Court of Appeal in Cyprus seeking a determination which, if successful, would result in the 100,000 Euro limit being applied to the IB Capital losses on a "per investor' basis rather than to the single Randius account. The Receiver recently inquired of the DPPO concerning the status of the Appeal and was informed the DPPO's international adviser is on holidays though mid-August. The DPPO indicated they would contact me, once their adviser returns and receives an update.

## II. Assignments from Neotex Advanced, Ltd. and Essadia Moutaouakkil

The Receiver has obtained Assignment Documents from Essadia Moutaouakkil ("E. Moutaouakkil") and Neotex Advanced, Ltd. ("Neotex"). The Assignment Documents from E. Moutaouakkil pertain to approximately USD $4.3 million which the Receiver understands is

presently on deposit at Banque Populaire in Morocco. The Receiver's retained counsel in Morocco has sent two notices of the Assignment Documents to Banque Populaire. If Moroccan counsel does not receive an appropriate response soon, he will file suit against the bank.

The Receiver has also obtained Assignment Documents from Neotex Advanced, Ltd. ("Neotex"). At one time, Neotex had approximately USD $1.5 million on deposit with FBME Bank in Cyprus in two separate accounts. If the Appeal referenced above is successful in Cyprus, the 100,000 Euro limit under the Cyprus DPS would be applied on a "per investor" basis rather than a per account basis.

### III. Possible Assignments from Riknik & Sons, Ltd., Michel Geurkink and Zsofia Dobos

As reported in the last status report, the Receiver was hoping to obtain Assignment Documents from Zsofia Dobos, a resident of Hungary. Ms. Dobos is listed as the Ultimate Beneficial Owner on the Riknik account in Slovakia. The negotiations with Ms. Dobos's Hungarian counsel have failed. The primary reason they were not successful is because Ms. Dobos was not willing to execute the Assignment Documents without retaining a portion of the funds for herself. As noted above, because of these failed negotiations, the Receiver is moving forward with Slovakian counsel's assistance to have the Riknik judgment recognized in Slovakia and to repatriate the USD $7.2 million to the United States.

### IV. Status of Restoration Proceedings for IB Capital FX LLP and Maverick

In order to have IB Capital FX LLP and Maverick reinstated into the Registrar of Companies in the United Kingdom, the Receiver hired legal counsel in the UK; so, the intent of the Maverick Assignment Documents may be effectuated and the funds in the ING Accounts

may be transferred to the Receiver. The Receiver has retained counsel from the UK and the reinstatement process for IB Capital FX LLP was initiated on October 25, 2019.

On July 7, 2020, the Receiver's UK Counsel informed the Receiver the judge presiding over the reinstatement proceeding sought clarification as to the Receiver's appointment over the UK entity, IB Capital FX LLP.  The judge presiding over the proceeding considered the IB Capital Consent Order was only evidence of the Receiver's appointment as receiver for IB Capital FX (NZ) LLP.  It was not apparent to the Judge in the reinstatement proceeding that IB Capital FX LLP is an affiliate of IB Capital FX (NZ) LLP and she requested clarification be sought from this Court on that issue. On July 24, 2020, the Receiver filed a Motion for Clarification, asking the Court to find IB Capital FX LLP an affiliate of IB Capital FX (NZ) LLC.

### V.    Upcoming discussions with Rabiaa Moutaouakkil

The Receiver was recently informed by the DPPO that Rabiaa Moutaouakkil ("R. Mouattaoukkil") is interested in resolving the claims against her. The Receiver's Dutch counsel followed up with Ms. R. Moutaouakkil's counsel who indicated she will soon be retaining new counsel, to further discuss settlement. The Receiver's counsel was informed approximately three (3) months ago that her new counsel needed sufficient time to become familiar with the file. The Receiver recently asked his Dutch counsel to again reach out to R. Moutaouakkil's counsel but has not yet heard back.

It is the Receiver's understanding there are five (5) tracts of real estate in Morocco titled in the name of R. Moutaouakkil which were acquired with funds that were misappropriated from IB Capital. The Receiver, with assistance from Moroccan counsel, will seek to have title

transferred to him and the real estate sold thereafter with the proceeds being returned to the Receivership estate. The Receiver is not certain of the value of the real estate in question but understands it may be in the range of USD $1 to $1.5 million. In addition to the real estate, there is also approximately USD $325,000 presently frozen in a Moroccan bank account.

## VI.    Status of Dutch proceeding

The Receiver's Dutch counsel provides as follows:

> Following further exchanges with the Court and the public prosecutor on the scope of the documentation made available by the Court in April and May 2020, the Receiver's Dutch counsel reviewed certain additional documentation made available confidentially by the Court in June 2020. On 17 June 2020, the Receiver's Dutch counsel attended a hearing at the Court and further explained and fully maintained the Complaint. In its decision of 7 July 2020, the Court ordered that ING and its former CEO, Mr Hamers, are to be heard at the Court at a date yet to be set. Following the hearing of ING and Mr Hamers, the Court is set to schedule another hearing where the Receiver, the public prosecutor and ING and Mr Hamers can address the Complaint.

The Receiver was provided a translated copy of the minutes of the July 27, 2020, hearing before the Court of Appeal at the Hague. While those minutes are confidential, the Receiver was very encouraged by questions being raised by the Court and his counsel's response thereto. The Receiver's Dutch counsel should be commended for their efforts and performance.

## VII.   Upcoming Interim Distribution

On July 22, 2020, the Court requested an Amended Combined Agreed Order for the Unopposed Motions to Appoint the National Futures Association as Monitor and for Approval of Interim Distribution Plan. Once entered, the Amended Combined Agreed Order for the Unopposed Motion to Appoint the National Futures Association as Monitor and for Approval of Interim Distribution Plan, the plan will go into effect. Under the first interim distribution plan, the Investor

Claimants will receive distributions in the amount of 9.09%[1] of their Allowed Claim Amounts as reflected in their Notices of Determination multiplied by the Distribution Percentages.

The Receiver emailed the Investor Claimants the release form. To date, out of the 931 Investor Claimants, the Receiver received 776 release forms and address validations. For the remaining 155 Investor Claimants, who do not respond to the Receiver's email notifications, Facebook site announcements or the Receivership website posts, the Receiver will send a written notification by mail to their addresses on file.

### VIII.  Conclusion

The next status report will be submitted to the Court on January 31, 2021. If significant developments occur in the interim, the Receiver will file a report before January 31, 2021.

---

[1] Plan B:    $2,100,000.00  ÷   $23,095,225.12 (Total Claimed Amount) =    9.09%

>Respectfully submitted,
>GUY HOHMANN
>
>By: */s/ Guy Hohmann*
>   Guy Hohmann
>   State Bar No. 09813100
>   guyh@hohmannlaw.com
>   114 West 7th Street
>   Suite 1100
>   Austin, Texas 78701
>   (512) 495-1438
>
>**RECEIVER FOR THE PROPHETMAX AND IB CAPITAL RECEIVERSHIP ESTATES**

**CERTIFICATE OF SERVICE**

On July 31, 2020, I electronically submitted the foregoing document with the Clerk of the Court of the U.S. District Court, Western District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

>*/s/ Guy Hohmann*
>Guy Hohmann

8