THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES COMMODITY FUTURES TRADING COMMISSION, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civil Action No. A-12-CV-0862-LY |
| SENEN POUSA, INVESTMENT INTELLIGENCE CORPORATION, *DBA* PROPHETMAX MANAGED FX, JOEL FRIANT, MICHAEL DILLARD, and ELEVATION GROUP, INC., | § § § § § § § | |
| *Defendants*. | § | |

## RECEIVER'S STATUS UPDATE

Comes now, Guy M. Hohmann, the Court-appointed Receiver in the above-referenced ProphetMax Receivership matter and the ancillary IB Capital matter and files this his Status Update.

**ING Settlement**

As previously reported to the Court, over the past twenty-two months the Receiver, with the assistance of his US and Dutch counsel, has been negotiating and has recently entered into, a settlement agreement, subject to the Court's approval. A copy of the settlement agreement with ING Bank was filed on December 22, 2021 as exhibit 1 to the Receiver's Motion for Leave to File Under Seal [Dkt. # 205]. The document was filed under seal as required by the settlement agreement because it contains confidential information (wire transfer details and investor claimants' personal information).

The settlement agreement does not constitute an admission or concession by ING of any violation of any statute or law, of any fault, liability or wrongdoing, or of any infirmity in the

claims or defenses of the Parties. ING has always denied and continues to expressly deny any liability or wrongdoing.

The ING Settlement will permit the Receiver to make a distribution for pro rata immediate restitution of approximately 36 percent of the net cash losses of the investors. The ING Settlement will also permit the Receiver to pursue frozen funds in other jurisdictions that could substantially augment this restitution in the relative near term.

The Receiver has filed a Motion to Approve the Settlement, to Issue Ancillary Channeling and Bar Injunctions, and to Establish Distribution Procedures ("Motion to Approve") [Dkt. #206].

Finally, the Receiver has also recently filed a Motion to Approve Notice Procedures and to Set Hearing [Dkt. #207]. The proposed notice to investors discusses the ING settlement and provides a 30 (thirty) day deadline to object to the proposed settlement and also sets a hearing date on the motion.

Once the Court sets a hearing date, the Receiver will email the Notice to all investors at the emails we have on file.[1] The Receiver's next step is to have his paralegal telephone the investor claimants with the telephone numbers provided to the Receiver on their claim forms. The Receiver will also announce an update on the Receivership Facebook site and post the Notice with an update on the Receivership website. Assuming the Court rules favorably on the ING Settlement Distribution Plan, the Receiver can begin the distribution phase. Before the Receiver will be allowed to send a distribution, the investors must first sign and return a document acknowledging their settlement amount, requesting payment, and waiving their rights to sue ING Bank. It is the

---

[1] In the spring of 2020, the Receiver's paralegal sent postcards to all investors whose email addresses were returned undeliverable requesting them to contact the Receiver. The Receiver's paralegal received numerous responses and updated the investor claimants' contact information. The Receiver currently has 120 investor claimants that have been non-responsive to all forms of attempted contact.

Receiver's strong belief that any investor claims against ING are time barred by applicable status of limitations, in any event.

It is important to reiterate, before the distribution phase can begin, the Court must rule favorably on all of the above-mentioned motions. Assuming the Court rules favorably, the Receiver will submit a Motion to Approve the ING Settlement Plan ("the Plan"). The Plan will include all details setting forth the steps leading up to the distribution and the role of a distribution agent the Receiver is contemplating hiring as part of that process (subject to the Court's approval).

## Criminal Trial of Echadi and Geurkink and Letters from the Dutch Public Prosecutor's Office

On October 28, 2021, the perpetrators of the IB Capital fraud (Emed Echadi and Michel Geurkink) were convicted in the Netherlands. The Receiver has recently received two letters from numerous investors that received them via the postal service by the National Office for Serious Fraud, Environmental Crime and Asset Confiscation ("Functional Parkeet") in Amsterdam (the "DPPO"). It is the Receiver's understanding the DPPO mailed these letters to persons that had previously registered with them as victims of a financial crime. Rather than compensate the victims through that criminal proceeding, the DPPO has elected for all victims of the IB Capital fraud to be compensated through the US Receivership proceeding. It is also the Receiver's understanding that, in the Netherlands, unlike the United States, Court proceedings and Court documents are not as open or available to the public. It is the DPPO's standard practice to mail letters to inform registered victims of financial crimes of the outcome of the criminal proceeding.

**On-Going Recovery Efforts**

As previously stated in the Receiver's Status Reports on July 31, 2020 [Dkt.185], January 31, 2021[195] and July 30, 2021 [197], the Receiver continues to make progress on multiple recovery efforts.

After the criminal verdict, the Receiver reached out to the DPPO inquiring about additional repatriation efforts which can move forward in light of the convictions. The DPPO informed the Receiver it must first obtain a Slovakian translation of the Dutch Court's verdict. Once that translation is obtained and provided to the Slovakian government, a bank in Slovakia will then transfer approximately USD $7.2 million. It is not clear at present whether those funds will be routed through the DPPO or transferred directly to the Receiver.

The Receiver also recently inquired of the DPPO regarding approximately EUR 3 million (in the aggregate) which is on deposit at ING Bank in the accounts of IB Capital and an affiliated company, Maverick, Ltd. The DPPO suggested the Receiver contact ING's counsel and request that ING request the DPPO to lift the seizure on the accounts. After ING makes that request, the DPPO has indicated it will lift the seizure except for approximately EUR 500,000. This amount represents funds which were misappropriated by Messrs. Echade and Geurkink as part of a separate fraud effecting two individuals. Once it is determined what percentage on the dollar the Receiver will be able to return to the IB Capital investors, it is envisioned that a similar pro rata payment percentage will be made to the two individuals of the separate fraud and the balance of the EUR 500,000 will be transferred to the Receivership estate.

In Morocco, as noted in previous reports, Banque Populaire's counsel set forth a process which the Receiver has been required to follow in order to have the funds transferred to a receivership bank account to repatriate the approximate USD 4.5 million which is on deposit in

Morocco. As part of that process, the Receiver recently obtained an assignment for account proceeds in a bank account in the name of Essadia Moutaouakkil in Morocco. The assignment documents have already been executed by the assignor, Essadia Moutaouakkil. In summary, all that remains to complete the process laid out by Banque Populaire's counsel is for the Receiver to execute the assignment documents in the presence of a notary in the offices of the Moroccan consulate in New York.[2]

The Receiver is in the process of obtaining an assignment agreement with Emed Echadi for another account at Banque Populaire which also holds Moroccan Dirham that are equivalent to approximately USD $217,000 (subject to daily exchange rates).

In Cyprus, late last summer, the Receiver was informed through his Cyprus counsel the Cyprus Supreme Court has ruled the receivership estate is entitled to approximately USD $1,135,000. Those funds are presently being held by the Cyprus Attorney General's Office. The Receiver's Cyprus counsel has been communicating with the Attorney General's Office, regarding the next steps that are necessary to have those funds transferred to the receivership estate. In addition to the above sum, the Receiver has been informed through the DPPO that approximately EUR 100,000 will be paid to the Receivership estate through the liquidator of Randius, Ltd.

The Receiver envisions an additional distribution being made (after the ING settlement distribution) from future proceeds referenced above. The Receiver is presently estimating he will be able to make this additional distribution towards the end of 2022.

## CONCLUSION

The next status report will be submitted to the Court on July 31, 2022. If significant developments occur in the interim, the Receiver will file a report before that date.

---

[2] That process is more fully described in the Receiver's previously filed Unopposed Motion to Approve payment of Administrative Expenses. [Dkt. # 202]. That motion has not yet been ruled upon.

> Respectfully submitted,
>
> GUY HOHMANN
>
> By: */s/ Guy Hohmann*
>
>> Guy Hohmann
>> State Bar No. 09813100
>> guyh@hohmannlaw.com
>> 114 West 7th Street
>> Suite 1100
>> Austin, Texas 78701
>> (512) 495-1438
>
> **RECEIVER FOR THE PROPHETMAX AND IB CAPITAL RECEIVERSHIP ESTATES**

## CERTIFICATE OF SERVICE

On January 31, 2022, I electronically submitted the foregoing document with the Clerk of the Court of the U.S. District Court, Western District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

> */s/ Guy Hohmann*
> Guy Hohmann